### GEORGE HILLEN V. THE STATE.

No. 11127.        Delivered January 11, 1928.

**1.—Manslaughter — Evidence That Deceased Was Unarmed — Properly Admitted.**

Where, on a trial for murder, the accused claimed to have acted in self-defense in firing the shot which killed deceased, the state had the right to show that the deceased was, at the time unarmed. Such fact may be proven by circumstances, such as that no weapon was found on his body, or that his weapon or weapons were at another and different place at the time of the killing. See Grubb v. State, 43 Tex. Crim. Rep. 75, and Thomas v. State, 45 Tex. Crim. Rep. 114.

**2.—Same—Evidence—Cross-Examination—Properly Admitted.**

Where, on a trial for murder, defense witness Edge having testified that deceased had a bad reputation in the community in which he lived for being a violent, overbearing and dangerous man, it was proper to permit the state on cross-examination to ask said witness if he did not know that deceased was a deputy sheriff at Tenaha and was paid a salary by the people of that town. Any circumstance which fairly tends to make the

proposition at issue more or less probable is relevant. See McGuire v. State, 10 Tex. Crim. App. 187, and other cases cited.

### 3.—Same—Continued.

"The limits within which either party may cross-examine upon matter not strictly relevant, but which affects the credibility of the witness, is largely discretionary and a reasonable exercise of this discretion will be allowed."

### 4.—Same—Evidence as to Good Reputation of Deceased—Improperly Admitted.

Where, on a murder trial, the appellant had attacked the reputation of deceased, it was error to permit the state to prove by two witnesses that the deceased was the only deputy sheriff who ever served in Tenaha, whose salary was paid by the citizens of the town. The proposition that the citizens of Tenaha valued more highly the services of deceased than any other man, was not an issue in this case, and such proof could have been only harmful to the cause of appellant.

### 5.—Same—Evidence—Attempted Impeachment—Improper.

Where appellant had testified in his own behalf, it was error to permit the state to ask him on cross-examination how long it had been, at the time of the killing, since the citizenship of Tenaha had hired deceased as an officer. Such cross-examination was not relevant to any issue in the case.

### 6.—Same—Evidence—Not Relevant—Improperly Admitted.

Where it was shown that at the time of the killing appellant was trying to arrest deceased under a complaint charging him with an assault, filed by one Conway, it was error to permit the state to prove that said Conway had once been arrested by deceased under a charge of theft. Such proof had no relevancy to the case, and Conway did not testify as a witness.

### 7.—Same—Continued.

Nor was it relevant or permissible to permit the state to prove that one Watson, who was not a witness in the case, had been charged by Conway with an assault on the same day that Conway charged the deceased with assaulting him. We perceive no issue in this case to which this testimony could be properly applied.

### 8.—Same — Evidence — Reputation of Deceased — Cross - Examination— Erroneously Excluded.

Where a witness for the state had testified to the good reputation for peace and quietude of the deceased, it was error to refuse to permit appellant on cross-examination to ask the witness if he did not know that shortly before the death of deceased the latter made a deadly assault with a pistol on one Jackson. See Branch's Ann. P. C., page 117; Holloway v. State, 45 Tex. Crim. Rep. 303, and other cases cited.

### 9.—Same—Bystander's Bills—Practice Discouraged.

There are numerous bystanders' bills presented in this record. Now that competent stenographers report the trial of all cases in the district courts, there remains no good reason for such bills in any record, and their appearance is a cause of a great deal of trouble to this court, and it occurs to us that they could, in most cases, be avoided.

Appeal from the District Court of Shelby County. Tried below before the Hon. R. T. Brown, Judge.

Appeal from a conviction for manslaughter, penalty five years in the penitentiary.

The opinion states the case.

*Sanders & Sanders* of Center, for appellant.

*Davis & Davis* of Center, and *A. A. Dawson*, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for manslaughter; punishment five years in the penitentiary.

Appellant was. constable of the precinct in Shelby County in which was located the town of Tenaha. Deceased had been local deputy sheriff at said place for a number of years. The men met in said town on the occasion of the homicide, and after some conversation started across the street. The testimony conflicts as to the attitude and relative positions of the two men as they crossed the street and as to who began the difficulty and how it originated. There seems no conflict over the fact that a complaint had been filed on that day in the justice court at Tenaha by one Conway, charging deceased with an assault and battery, and that a warrant for the arrest of deceased had been placed in the hands of appellant. He claimed that he mentioned to deceased the fact that he had this warrant of arrest and it so angered deceased as that the latter made gestures, accompanied by words, which led him to believe that deceased was about to take his life.

In this case the accused claimed to have acted in self-defense in firing the shot which took the life of deceased. In such case the state has the right to show that the deceased was unarmed. Grubb v. State, 43 Tex. Crim. Rep. 75; Thomas v. State, 45 Tex. Crim. Rep. 114. Such fact may be proven by circumstances, such as that no weapon was found on his body, or that his weapon or weapons were at other and different places at the time of the killing.

Appellant claimed that when he informed deceased that he had the warrant for his arrest the latter said that appellant could not arrest him. Appellant said he told deceased that he was wrong,—he knew an officer's duty, and that deceased turned white and started toward appellant. Appellant said he got off the sidewalk. That deceased said, "You are pushing this damned business," and kept on coming toward appellant, and

said he was going to kill the man who made the complaint, and appellant too. Appellant said he tried to reason with deceased, who kept on advancing. Appellant said he told him to stop, and retreated twenty-five or thirty steps, holding his pistol in his hand. Appellant testified that deceased said he was going to make appellant "Eat that damned thing," and that deceased put both of his hands in his pockets, where appellant said he knew deceased frequently carried a pistol, and at this point appellant said he shot. The state's theory supported by the testimony of its witnesses made out a case of murder and showed an entirely different state of facts.

Appellant put Mr. Edge on the stand and proved by him that deceased had a bad reputation in the community in which he lived for being a violent, overbearing and dangerous man. In cross-examination of Edge the state had him admit, over objection, that he knew that deceased was deputy sheriff at Tenaha and was paid a salary by the people of said town. We believe the testimony relevant. Any circumstances which fairly tends to make the proposition at issue more or less probable becomes relevant. McGuire v. State, 10 Tex. Crim. App. 187; Luttrell v. State, 40 Tex. Crim. Rep. 651; Lane v. State, 164 S. W. 370; Wharton's Crim. Ev., Secs. 20-21; State v. O'Neill, 9 Pac. 286; Levy v. Campbell, 20 S. W. 196. Mr. Underhill in Sec. 855 of his work on Criminal Evidence, says:

"The limits within which either party may cross-examine upon matter not strictly relevant, but which affects the credibility of the witness, is largely discretionary, and a reasonable exercise of this discretion will always be allowed."

Reverting to the testimony of Edge, we observe that he said he lived ten or twelve miles from Tenaha over in Panola County. Tenaha is in Shelby County. Edge was able to recall only one man who said deceased was a dangerous man, and this person also lived near Edge and in Panola County. Witness said he had heard others reflect upon deceased but could not name them. We think it entirely within the reasonable discretion of the trial court to permit this witness on cross-examination to be asked if he did not know that the deceased was a peace officer in the town in which he lived, and that his salary as such was paid by citizens of said town. That the citizenship of a town would voluntarily pay for the services of one as a peace officer in the town would be a circumstance which, if known by the witness, might affect the jury's opinion of the accuracy of the knowledge of said witness, he living in another county many miles distant

from the place where the man lived whose reputation was attacked by his testimony.

Complaint is made in another bill of exceptions that Mr. Barber, a state witness, was allowed to answer the state, over objection, that he had never heard of any other deputy sheriff except deceased who had been hired by the citizenship of Tenaha as such officer. This presents a totally different question from that arising upon the testimony of witness Edge, supra. Here we have a man who lived at Tenaha; had himself been deputy sheriff at such place, who is thus allowed to place before the jury the fact that among all the local deputy sheriffs had in the town of Tenaha deceased was the only one so highly regarded by the citizenship as that they voluntarily paid his salary themselves. The question arises: Why such proof, and why show the jury that appellant had killed the most highly thought of deputy sheriff the town ever had? That appellant's cause was harmed by such proof is plain. He was shown to have killed an officer who was more highly valued by his people than any other one who had ever held such office. We regard the admission of this testimony as error.

What we have just said applies to the same question asked witness Burns, viz.: Had he ever heard of any other man who had been hired by the citizenship of Tenaha to act as deputy sheriff? The proposition that the citizens of Tenaha valued more highly the services of deceased as a peace officer than any other man was not an issue in this case, and such proof could have been only harmful to the cause of appellant.

Appellant took the witness stand and gave his version of the killing. On his cross-examination he was asked how long it had been, at the time of the killing, since the citizenship of Tenaha, a village of four hundred population, had hired deceased as an officer. We note that this was not the cross-examination of a character witness for the purpose of testing his accuracy or the extent of his knowledge, but was an effort on the part of the state to keep before the jury the fact that appellant had killed one who was a valued officer, whose services the citizenship of the entire town valued highly enough to privately pay his salary. We do not believe this testimony should have been permitted.

As stated above, appellant claimed that he was seeking to arrest deceased at the time of the killing, having a warrant issued upon a complaint made by Preston Conway. Conway was not a witness in the case, but was shown to be related to appellant. Mr. Burns, justice of the peace, who issued said war-

rant, was a witness for the defense on this trial.   He was asked
by the state on cross-examination if deceased did not arrest
said Conway for theft on a warrant issued by witness.   The
question and its answer were objected to by appellant for various
reasons.   The learned trial court in his qualification to this bill
of exceptions says he admitted the testimony on the question
of motive of appellant and Conway and as showing the kind
of person Conway was, who had complained against deceased,
and after the reputation of deceased had been attacked.   We
think the learned trial court in error in admitting this testi-
mony.   Whether Conway was a thief or not was not an issue
in the case, nor was it an issue that deceased had any right to
assault a man because he was a thief, or because said party
had been arrested for theft.   We are unable to see any reason
for such proof in this case.

The state proved over objection that after the killing one
Watson pleaded guilty before Justice Burns to an assault and
battery on Preston Conway.   Complaint against Watson was
shown to have been filed by Conway on the same day he filed
complaint against deceased.   We observe that Watson was not
a witness in this case.   In his qualification to the bill reserved
to the admission of this testimony the trial court said he
admitted same on the motive and intent of appellant.   Again
we are unable to see the relevance of the evidence to the pur-
pose for which it was admitted, or to any other legitimate issue
in this case.   We can conceive how such testimony might be
used as supporting a plea that Watson having pleaded guilty
to the assault, this tended to show that he and not deceased
was the party guilty of an assault and battery upon Conway
and that Conway (a relative of appellant) wrongfully com-
plained against deceased, possibly at the instigation of appellant,
his relative.   We perceive no issue in this case to which the tes-
timony could be properly applied.

The state proved by Johnson the good reputation of deceased
for peace and quietude.   Cross-examining Johnson appellant
asked if witness did not know that shortly before the death of
deceased the latter made a deadly assault with a pistol on one
Jackson.   Objection of the state to questions relative to specific
acts of violence was sustained.   Mr. Branch on page 117 of his
Annotated P. C. cites many authorities supporting the propo-
sition that when good character is proven, the opposite side
on cross-examination may ask as to specific acts which reflect
unfavorably on the trait in issue.   See also Holloway v. State, 45
Tex. Crim. Rep. 303; Williamson v. State, 74 Tex. Crim. Rep.

289; Roberson v. State, 83 Tex. Crim. Rep. 248. Substantially the same question was asked and the same answer expected, of another witness, objection to whose testimony was sustained, as shown in bill of exceptions No. 14c, and the same ruling was made by the court below. We think the bill manifests the same error as the one just discussed.

This court notes with regret numerous bills of exceptions in this record purporting to be bystanders' bills. Most, if not all of these, are defective for one reason or another. The practice as to such bills originated before the days when competent and reliable court stenographers by their constant presence and efforts made it possible for records on appeal to be prepared accurately without the former and ancient inevitable conflicts when the statement of facts and bills of exception were prepared from memory or from hasty notes. There still may arise cases when such bills become necessary, but certainly there ought to be small necessity for such number of bills as appear in this record. The reconciliation of such bills causes this court a great deal of trouble, and it appears to us that same could in most cases be avoided.

For the errors above mentioned the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*